# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Paul Cannon, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:14-cv-4805-PMD-KFM |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Equilon Enterprises, LLC, *d/b/a* | ) | |
| Shell Oil Products US, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R & R") (ECF No. 86). In his R & R, the Magistrate Judge recommends the Court partially grant and partially deny Defendant Equilon Enterprises, LLC's ("SOPUS") motion for summary judgment (ECF No. 57). SOPUS objects to portions of the R & R. (ECF No. 86.) For the following reasons, the Court overrules SOPUS's objections, adopts the R & R, and disposes of SOPUS's motion as the Magistrate Judge recommends.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court must conduct a de novo review of any portion of the R & R to which a timely, specific objection is made, and the Court may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.* Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **DISCUSSION**

Plaintiff Paul Cannon asserts that SOPUS, his former employer, unlawfully fired him in retaliation for taking leave guaranteed to him under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*[1] Such claims can be proven using the three-step framework the Supreme Court laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). At the first step, the plaintiff must establish a *prima facie* FMLA retaliation claim. *Id.* If he does, retaliation is presumed. *Id.* At the second step, the defendant must produce evidence that rebuts the presumption and provides a legitimate, nondiscriminatory explanation for the adverse employment action. *Id.* (citation omitted). If the defendant meets that burden, the third step is for the plaintiff to persuade the factfinder that the defendant's proffered explanation is merely a pretext for retaliation, which the plaintiff can do "by showing either that the employer's explanation is not credible, or that the [defendant]'s decision was more likely the result of retaliation." *Id.* (citation and quotation marks omitted).

The parties agree that the first and second steps have been satisfied here. The question, then, is narrow: whether Cannon has come forward with evidence that would allow a reasonable jury to determine SOPUS's proffered reason for firing him—dishonestly seeking reimbursement

---

1. Cannon has also asserted a state-law claim against SOPUS for defamation; SOPUS seeks summary judgment on that claim as well. Because Cannon concedes that he lacks evidence to support the claim, the Magistrate Judge recommends granting SOPUS summary judgment on the claim. No party objects to that recommendation, and the Court agrees with it. Accordingly, the Court will grant SOPUS's motion as to the defamation claim.

2

for expenses not payable under company policy—is pretext for FMLA retaliation. The Magistrate Judge concluded Cannon met that burden. SOPUS makes three objections to that conclusion.

## I. The But-For Causation Standard

SOPUS first argues the Magistrate Judge improperly failed to apply the but-for causation standard in his pretext analysis.[2] To be sure, the phrase "but for" does not appear in the R & R. The Magistrate Judge, however, made clear that he was applying *McDonnell Douglas*, a framework the Fourth Circuit has said "demand[s] proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). Thus, by applying *McDonnell Douglas*, the Magistrate Judge did what SOPUS wanted him to do. The objection is therefore overruled.

## II. Three Types of Evidence

SOPUS next objects to the Magistrate Judge's reliance on three types of evidence in the record: (1) evidence of temporal proximity; (2) evidence of SOPUS misstating facts to the EEOC; and (3) evidence of SOPUS inconsistently applying the policy Cannon purportedly violated. For the following reasons, the Court overrules the objections.

### A. "Double Temporal Proximity"

In his discussion of pretext, the Magistrate Judge pointed out there is evidence indicating that SOPUS began investigating Cannon's expense requests shortly after he said he needed to take medical leave and that it fired him one day after he returned from leave. SOPUS argues the Magistrate erred in finding this "double temporal proximity" was "sufficient to support a finding of pretext." (Mem. Supp. Def.'s Objs., ECF No. 86-1, at 8; *see also id.* at 10 ("[T]he Magistrate

---

2. In this objection, SOPUS also argues that no reasonable jury could conclude it would not have fired Cannon but for him taking FMLA leave. Because that argument is essentially SOPUS's third objection, the Court addresses it as part of that objection. *See* Section III *infra*.

3

Judge erred by finding the temporal proximity of the decision to terminate would permit a reasonable jury to conclude pretext.").)

SOPUS's argument misapprehends the Magistrate Judge's analysis. The Magistrate Judge did not say that the two instances of temporal proximity were, by themselves, sufficient to create a jury question. Rather, the Magistrate Judge treated those instances as two pieces of a larger evidentiary landscape that, in his view, contains a triable issue of fact on pretext. That was proper. *See Chauncey v. Life Cycle Eng'g*, No. 2:12-cv-968-DCN, 2013 WL 5468237, at *17 (D.S.C. Sept. 30, 2013).

SOPUS also argues that, for two reasons, the Magistrate Judge should not have relied on evidence of the proximity between Cannon requesting leave and SOPUS investigating him. First, SOPUS argues that because investigating an employee is not an adverse employment action, a close temporal proximity between an employee requesting leave and a company starting an investigation is not probative of pretext. The Court disagrees. District courts analyzing pretext may consider, among other things, "'[t]he specific sequence of events leading up to the challenged decision.'" *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997)). That is what the Magistrate Judge did here; notably, before doing so, he quoted *Sharif* for that proposition.

Second, SOPUS argues the record conclusively demonstrates it began investigating Cannon before he said he needed to take FMLA leave. It points out that on August 6, 2013—the day Cannon mentioned he needed to take leave—Cannon's supervisor, Thomas de Boer, asked Cannon about selling his house in Washington state and requesting reimbursement for internet service at an address outside Cannon's sales territory. SOPUS contends this shows it knew about those issues before Cannon said he needed to take leave. What SOPUS overlooks,

4

however, is that de Boer asked those questions *shortly after* Cannon told him he needed to take leave,[3] and that, as the Magistrate Judge noted, the record is at best unclear as to whether SOPUS took any investigatory action on those issues before Cannon mentioned his need for leave. In other words, a jury could reasonably conclude that, although SOPUS knew before August 6 that Cannon may have acted improperly, it did not take any action on that knowledge until after Cannon made it known he would be taking federally protected medical leave.

### B. SOPUS's Representation to the EEOC

SOPUS next argues the Magistrate Judge erred in basing his pretext analysis on the inaccuracy of a representation SOPUS made to the EEOC. After Cannon filed his discrimination charge with the EEOC, SOPUS responded in its position statement that "[i]n July 2013 and in advance of the [August 6,] 2013 midyear performance discussion, Mr. de Boer reviewed expenses previously submitted by Mr. Cannon and Company owned vehicle mileage reports." (EEOC Ltr., ECF No. 69-2, at 4.) In other words, SOPUS told the EEOC it started investigating Cannon's reimbursement requests and mileage reports before he said he needed to take FMLA leave. However, evidence produced in discovery could lead a reasonable jury to find that statement inaccurate. For example, the record shows de Boer did not receive Cannon's mileage reports until August 30, 2013, and did not receive Cannon's expense requests until September 4—nearly a month after Cannon disclosed his need to take leave.

SOPUS disputes that its EEOC statement is inaccurate as to the expense reports but acknowledges the statement is inaccurate as to the mileage reports. Nevertheless, SOPUS argues, the inaccuracy regarding the mileage reports must be ignored. In its view, that inaccuracy is irrelevant because de Boer reviewed the mileage reports for the purpose of

---
3. Cannon revealed his diagnosis and need for leave at a dinner with de Boer, and de Boer asked Cannon about those issues in a meeting later that night.

determining whether Cannon had spent sufficient time visiting customers, an issue unrelated to SOPUS's proffered reason for firing Cannon. The Court disagrees. The record indicates SOPUS began the investigation out of a concern that Cannon had, without permission, moved out of his work territory. de Boer was reviewing Cannon's expense requests and travel activity as part of that investigation. The two issues, therefore, were not unrelated. In any event, even if SOPUS's argument about the mileage reports is correct, that in no way renders immaterial the inaccuracy of SOPUS's statement on the timing of when it began investigating Cannon's reimbursement requests—a key issue in this case.

SOPUS also asserts that any inaccuracy in its position statement was simply a mistake. That begs the question. Nikki Coleman, the employee who wrote the statement, worked in human resources for a subsidiary of an oil company that operates worldwide. Between Coleman's position and the level of detail she included in SOPUS's position statement to the EEOC, a jury could reasonably infer she had the ability to determine when de Boer obtained the records in question and in fact did so before writing the statement. In the light most favoring Cannon, the evidence could lead a reasonable jury to determine that Coleman did not simply make a mistake but instead intentionally misrepresented the timing of de Boer's review.

Next, SOPUS suggests it is inappropriate to use, as evidence of pretext, a misrepresentation in an unsworn position statement to the EEOC. The Court is not aware of any authority that renders inaccurate statements to a federal agency irrelevant simply because they were not made under penalty of perjury. To the contrary, this Court has recently cited inaccurate representations in EEOC position statements as evidence of pretext. *See McFadden v. Stahl Crane Sys., Inc.*, No. 2:13-cv-3039-DCN, 2017 WL 1190870, at \*9 (D.S.C. Mar. 31, 2017); *see*

*also Smith v. Shenandoah Valley Juvenile Det. Home Comm'n*, No. 5:04CV00022, 2005 WL 372262, at *7 (W.D. Va. Feb. 15, 2005).

Finally, SOPUS states that a single inconsistency is insufficient to establish pretext. To the extent SOPUS may be arguing the Magistrate Judge based his recommendation solely on the inconsistency, the Court disagrees. As discussed above, the Magistrate Judge based his recommendation on the entire record; the inconsistency was one piece of it that he highlighted in his R & R.

### C. Inconsistent Application of Expense Policy

The Magistrate Judge found there is evidence that SOPUS inconsistently applying its internet expense reimbursement policy in two ways. First, he pointed out that, although Cannon's internet expenses probably were never reimbursable, Cannon requested reimbursements for over three years, and yet he was never disciplined for it or questioned about it until after he said he needed to take FMLA leave. In that regard, the Magistrate Judge also noted that de Boer said that he periodically reviewed summaries of employee reimbursement requests and that requests for internet expenses were not out of the ordinary. Second, the Magistrate Judge wrote, Coleman testified that SOPUS allowed other employees who violated expense policies to repay SOPUS to avoid discipline—precisely what Cannon offered to do when de Boer accused him of improperly obtaining reimbursements.

SOPUS argues the Magistrate Judge should not have viewed this evidence to be probative of pretext. As to the first category of evidence, SOPUS contends it believed that Cannon violated the policy and that he did so through deceit. To be sure, there is evidence that, once de Boer took the time to examine Cannon's reimbursement requests, he believed Cannon had engaged in deceit by covering up the service address on some internet bills. That evidence,

7

however, does not negate the other evidence in the record showing that, for years, de Boer knew Cannon was getting reimbursed for internet expenses and did nothing about it.

As to the second category of evidence, SOPUS contends the Magistrate Judge erred by relying on Coleman's testimony that other employees were allowed to avoid discipline by repaying the company because Cannon has not shown that those employees were similarly situated to him. Coleman testified that the "conditions" in which employees repaid the company in lieu of discipline "have varied." (Tr. of Coleman Dep., ECF No. 69-2, at 102:10.) That answer, viewed in the light most favoring Cannon, is some evidence that at least one of those other employees was similarly situated. The Court therefore disagrees with SOPUS.

### III. Totality of the Evidence

Finally, SOPUS argues the Magistrate Judge erred by focusing exclusively on the three types of evidence discussed above, rather than analyzing the entire record. SOPUS contends that the record, when considered in its entirety, prevents a reasonable jury from concluding Cannon would not have been fired but for his request to take FMLA leave.

First, pointing out that employer intent is relevant in retaliation claims, SOPUS asserts the Magistrate Judge failed to address evidence of intent. The Court disagrees. The sequence of events leading up to the adverse employment action, as well as deviations from normal company procedure, are relevant to intent. *Sharif*, 841 F.3d at 205. Thus, by analyzing the evidence regarding those factors, the Magistrate Judge adequately addressed intent.

Second, SOPUS notes the Magistrate Judge failed to acknowledge that Cannon has not named any similarly situated employee who was treated differently than him. As discussed above, however, there is at least some evidence that other similarly situated employees may have been allowed to keep their jobs.

8

To be sure, a substantial portion of the record supports SOPUS's explanation of why it fired Cannon. However, the Court agrees with the Magistrate Judge that Cannon has come forward with sufficient evidence for a reasonable jury to find SOPUS's explanation is pretext for retaliation and to return a verdict in his favor. The Court therefore will deny SOPUS's summary-judgment motion as to Cannon's FMLA retaliation claim.

### IV. Overall Review of the R & R

As the above discussion indicates, the Court sees no error in the portions of the R & R to which SOPUS objected. The Court has also reviewed the remaining portions of the R & R for clear error. Seeing none, the Court will adopt the R & R as its own opinion.

### CONCLUSION

For the foregoing reasons, it is **ORDERED** that SOPUS's objections are **OVERRULED**, that the R & R is **ADOPTED**, and that SOPUS's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as described above.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**August 15, 2017**
**Charleston, South Carolina**